# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 17, 2012 Session

## CELSO V. MELENDEZ v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-B-1260     Monte Watkins, Judge**

---

**No. M2011-01802-CCA-R3-PC - Filed November 13, 2012**

---

The Petitioner, Celso V. Melendez, appeals the post-conviction court's denial of his petition for post-conviction relief from his guilty pleas to two counts of facilitation to deliver over 300 grams of cocaine and resulting effective sentence of twenty-four years. On appeal, the Petitioner contends that he received the ineffective assistance of counsel because his guilty pleas were based upon trial counsel's assurance that he would be eligible for the boot camp program. Based upon the oral arguments, the record, and the parties' briefs, we conclude that the Petitioner received the ineffective assistance of counsel. Therefore, the judgment of the post-conviction court is reversed, the judgments of conviction are vacated, and the case is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed, and the Case is Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

John E. Herbison, Clarksville, Tennessee, for the appellant, Celso V. Melendez.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I.  Factual Background

On May 7, 2004, the Davidson County Grand Jury indicted the Petitioner for twenty-one counts related to a conspiracy to deliver large amounts of cocaine from Texas to

Nashville.  Celso Vilorio Melendez v. State, No. M2009-01489-CCA-R3-PC, 2011 Tenn. Crim. App. LEXIS 76, at *2 (Nashville, Feb. 2, 2011).  On August 25, 2005, the Petitioner pled guilty to two counts of facilitation to deliver over 300 grams of cocaine, a Class B felony, and received twelve-year sentences to be served consecutively.  Id. at *3.  The Petitioner was sentenced as an especially mitigated offender with a release eligibility of twenty percent.  Id.

Subsequently, the Petitioner filed a timely petition for post-conviction relief, claiming that he received the ineffective assistance of counsel.  Id. at *5.  The post-conviction court appointed counsel, and counsel filed an amended petition, contending, in relevant part, that the Petitioner received the ineffective assistance of counsel because trial counsel failed to advise him accurately about his eligibility for the boot camp program.  Id. at **6-7.

The following evidence was presented at the evidentiary hearing:

> The Petitioner testified that he was aware that, if his guilty plea was set aside, he faced substantially more time in prison under the numerous charges in the original indictment. When asked why he still wanted to withdraw his plea, the Petitioner answered, "Because I believe that the law is not based on lies or deceit."
>
> The Petitioner's native language was Spanish, but he did speak some English.  The Petitioner was from El Salvador and had an eighth grade education.  According to the Petitioner, there was not an interpreter present at his guilty plea hearing, and he did not know he was entitled to have one present.  The Petitioner did not believe that, at the time of his plea, his English skills allowed him to adequately communicate with trial counsel. Prior to his arrest in another state and being brought to Nashville, the Petitioner had no prior dealings with the criminal justice system in Tennessee.
>
> When asked about other plea offers made by the State before the one he ultimately accepted, the Petitioner stated that the first offer was nineteen years at 30% and that the second one was sixteen years likewise at 30%.  The Petitioner acknowledged that his release eligibility date under the sixteen-year sentence would be the same as under the sentence he accepted.  The Petitioner also confirmed that the sixteen-year

offer would have required him to plead guilty to a Class A felony and, therefore, he accepted the twenty-four-year offer, pleading to Class B felonies, in order to be eligible to attend boot camp. The Petitioner stated that eligibility for the boot camp program was a very important concern to him, elaborating, "If it weren't for that I wouldn't have accepted it." The Petitioner claimed that he was told he would have the "same time," that no one told him "the twenty-four years was going to end up being a lot more time. Because what the parole [board] looks at are the two sentences. If I had known, I would have accepted the sixteen-year sentence without any argument."

The Petitioner testified that trial counsel did not explain eligibility requirements for boot camp to him, particularly the provision that gave higher priority to inmates between the ages of seventeen and twenty-five to enter the program. The Petitioner acknowledged that he was thirty years old at the time he entered his plea. After applying for boot camp once in prison, the Petitioner was told it was "impossible," receiving the following explanation: "In the first place I was older. Second time I had a long time, a long sentence. And third place, I had no possibility because of the amount of drugs in the case." The Petitioner testified that, if trial counsel had discussed the factors affecting his eligibility for, or likelihood of his going to, boot camp, then he would not have accepted the plea offer and would have insisted on going to trial. He reiterated that the reason he accepted the longer, twenty-four-year sentence rather than the shorter, sixteen-year sentence was because he "was going to go to boot camp." Furthermore, the Petitioner stated that trial counsel did not explain how the parole system worked and that he did not understand what release eligibility meant.

When asked if he had any other concerns with trial counsel's representation, the Petitioner replied, "I think that [trial counsel] was trying to do the best for me. I think he also made the same mistake that I made" by "[n]ot investigating everything about the plea bargain." The Petitioner confirmed that he had a good rapport with trial counsel and that he trusted his judgment.

Upon questioning by the trial court, the Petitioner testified that he had been before the parole board one time. According to the Petitioner, the parole board said to him that he "had to fulfill one complete twelve-year sentence and then start on the other one, flatten it." When asked when would he next go before the parole board, the Petitioner responded, "The last time they gave me six years and told me I would not be able to come back until 2012."

On cross-examination, the Petitioner confirmed that he had reviewed the English transcript of his guilty plea hearing and that he remembered the proceedings. He stated that he conversed with trial counsel in both English and Spanish, and while there was confusion at times, the Petitioner was not troubled by their communication. The Petitioner confirmed that he was reviewed for parole in 2006, approximately six or seven months after his transfer to the DOC.

When asked if he mentioned anything about boot camp to the trial judge, the Petitioner answered, "I don't think anybody had the opportunity to talk on that day." The Petitioner did not recall the trial judge asking him whether he had been promised anything in exchange for his plea or whether he had any questions for the court. The Petitioner understood that, if he was convicted of all the original charges in the indictment, he could spend the rest of his life in prison.

Trial counsel then testified he was retained to represent the Petitioner after the preliminary hearing. Trial counsel testified that he obtained discovery in the Petitioner's case and familiarized himself with the allegations against the Petitioner. Trial counsel, who spoke Spanish, although not perfectly, met with the Petitioner, and they were able to communicate effectively[.]

. . . .

Trial counsel opined that, given the amount of drugs involved and the fact some of the actions occurred in a school zone, the Petitioner faced a substantial amount of time in jail if

-4-

convicted. According to trial counsel, the district attorney general did not make an offer at first "because she wasn't sure what she wanted to do with it for [the Petitioner]." Eventually, the prosecutor made an offer of twenty-six years at 30%, and that offer did not change for a long time. The offer was rejected, and trial counsel prepared for trial. Trial counsel later went and spoke with the prosecutor and "gave her some light to the case that she hadn't had before," and the prosecutor returned with an offer of nineteen years. Trial counsel did not recall there ever being a sixteen-year offer.

Trial counsel still did not like the nineteen-year offer: "That's an A felony. He won't even have a chance to go to boot camp. He won't be eligible for any programs and depending on his immigration status it might end up being he spends a lot more time in jail." Thereafter, trial counsel reviewed his "charge and guidelines" and formulated the twenty-four-year offer (two consecutive twelve-year terms) as a 20% mitigated offender. Reluctantly, the prosecutor agreed to the deal.

Trial counsel confirmed that there was no factual basis for the Petitioner being a mitigated offender[;] it was simply a benefit of the proposed plea agreement. Trial counsel testified that he then conveyed the offer to the Petitioner and approximated a parole eligibility date for him; he calculated that the Petitioner would be release eligible after service of 4.8 years. The Petitioner had approximately two years of jail credit at the time of his plea and sentencing. Trial counsel said that he never promised the Petitioner that he would be released the first time he went before the parole board.

Trial counsel testified that he discussed boot camp with the prosecutor but, while she would not oppose the Petitioner's participation in the program, she also would not recommend him for the program. According to trial counsel, boot camp participation was not a quid pro quo part of the plea agreement. Per his discussions with the prosecutor, trial counsel did not discuss boot camp with the trial judge so the prosecutor would not have to formally oppose it, thereby, protecting the Petitioner's eligibility for boot camp. Trial counsel said that he

never promised the Petitioner that he would be admitted to the boot camp program and that he never told the Petitioner he could withdraw his plea if he was not accepted into boot camp.

Trial counsel did not recall the Petitioner at the guilty plea hearing ever not wanting to enter a plea or ever not being able to answer questions appropriately. Trial counsel also recalled that an interpreter was present for the plea hearing and believed that the Petitioner understood what was going on during the proceedings. The Petitioner did ask trial counsel one question during the hearing, but trial counsel believed they resolved the matter.

On cross-examination, trial counsel was asked to detail what information he told the Petitioner about boot camp:

> I told him that there's programs available. I don't—I think I explained what boot camp was. . . . I think I did tell him the program takes a few months to complete. I said, "When you first go"—usually what I say is, "When you first go to M.T.X., they—there is a sorting out process that they assign, kind of, where you are." I said, "because there is no weapons involved in this case, and you don't have a prior record," things of that nature—I said, "you should be eligible"—the facilitation to deliver over a certain quantity—I think it was over three hundred grams. I told him that that could actually get him out sooner, his release eligibility date, if he qualified for the program.

When asked if eligibility for boot camp was important during plea negotiations, trial counsel responded, "I wanted him to get the B so he would have the opportunity to have it, but [the prosecutor] wasn't going to give a recommendation." According to trial counsel, maintaining potential eligibility for boot camp was an important factor to both [him] and the Petitioner. Trial counsel testified that he was not aware of the statutory preference for persons seventeen to twenty-five years of age, but

he did know the older a defendant was "the harder it [was] to get in." Furthermore, trial counsel did not look up the boot camp statute during the plea process and did not advise the Petitioner that persons under the age of twenty-five have a better likelihood of being admitted into the program.

Trial counsel did not discuss the effects of accepting the longer, aggregate consecutive sentence, as opposed to the Class A felony sentence offer. Trial counsel agreed that it was unusual for someone to make parole upon their first application, especially with a long sentence. When asked if he told the Petitioner "that twenty percent was just a starting point and that parole may well not be granted at the first opportunity," trial counsel replied that "I don't think I said it in that context." The Petitioner informed trial counsel that he was upset when he was put off for parole consideration until 2012.

Id. at **6-15 (footnotes omitted).

The post-conviction court denied the petition for post-conviction relief. Id. at *15. On appeal, this court concluded that trial counsel rendered deficient performance by advising the Petitioner that he was eligible for the boot camp program when the Petitioner, a drug offender, was not eligible. Id. at **23-24. This court remanded the case in order for the post-conviction court to determine whether the Petitioner was prejudiced by the deficiency. Id. at *28. On July 11, 2011, the post-conviction filed an order denying post-conviction relief, stating as follows:

The Petitioner would have entered into a plea "even if there was no offer of boot camp." Specifically, the Petitioner maintained that he would have pled to a sixteen[-]year sentence instead of a twenty-four year offer if he had known that he was ineligible for boot camp.[1] Although, trial counsel testified that there was never a sixteen[-]year offer only a nineteen-year offer at 30%.

The court further found that the Petitioner understood boot camp was an option, not a guarantee, and that the plea colloquy from the plea hearing demonstrated that he pled guilty

_____

[1] On direct examination, the Petitioner testified, "I am going to explain it again. The reason I accepted the twenty-four years was because I was going to go to boot camp. If not I would have signed the sixteen years at thirty percent, because that's eight years difference."

freely and voluntarily.

## II. Analysis

The Petitioner claims that he was prejudiced by trial counsel's incorrectly assuring him that he was eligible for the boot camp program. The State argues that although trial counsel incorrectly advised the Petitioner about boot camp, the post-conviction court correctly determined that the Petitioner was not prejudiced because admission into the boot camp program was not the only reason the Petitioner accepted a plea offer. The Petitioner accepted an offer to avoid the possibility of a life sentence.

To be successful in a claim for post-conviction relief, a petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Notably,

[b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). In the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Based upon our de novo review, we disagree with the post-conviction court and conclude that the Petitioner was prejudiced by trial counsel's deficient performance. The Petitioner's and trial counsel's testimony established that the State made previous plea offers to the Petitioner. The Petitioner testified that the first offer was for nineteen years at thirty percent and that the second offer was for sixteen years at thirty percent. Trial counsel testified that the first offer was for twenty-six years at thirty percent and that the second offer was for nineteen years at thirty percent. Regardless of the discrepancies in their testimony about the lengths of the offers, one fact is clear: The State's third offer for an effective sentence of twenty-four years, which the Petitioner accepted, was significantly lengthier than the previous offer of sixteen or nineteen years. The Petitioner testified that he accepted the offer for the twenty-four-year sentence because the sixteen-year offer would have required that he plead guilty to a Class A felony, making him ineligible for the boot camp program. Likewise, trial counsel testified that he was dissatisfied with the State's nineteen-year offer because the Petitioner would have been pleading to Class A felony and, therefore, would have been ineligible for the boot camp program. Thus, the testimony of both witnesses established that the Petitioner accepted the State's offer for the effective twenty-four-year sentence in order to be eligible for boot camp.

The post-conviction court found that the Petitioner failed to established prejudice because he testified that he would have entered a plea and accepted the State's second offer even if he had known that he was ineligible for the boot camp program. In Grindstaff v. State, 297 S.W.3d 208, 211 (Tenn. 2009), the petitioner pled guilty to five counts of aggravated sexual battery. Pursuant to the plea agreement, the trial court was to determine the length and manner of service of the sentences. Id. After a sentencing hearing, the petitioner received an effective sentence of thirty years to be served at 100%. Id. at 212. The petitioner filed a petition for post-conviction relief, arguing that he received the ineffective assistance of counsel. Id. The testimony at the evidentiary hearing established that the

petitioner had turned down the State's initial offer of eight years to be served at 100% and subsequent offers involving confinement because trial counsel had assured him that he would be eligible for alternative sentencing. Id. at 213-14. However, the petitioner was not eligible for probation or community corrections. Id. at 218. Our supreme court concluded that counsel rendered deficient performance and stated the following regarding prejudice:

> On two different occasions . . . , the Petitioner turned down offers by the State which demanded at least eight years of confinement in prison. One of those proposals provided for concurrent service for each of the offenses at the minimum term permitted by statute. In our view, the record demonstrates a reasonable probability that if trial counsel had adequately researched the applicable law and informed the Petitioner that alternative sentencing was not available, he would not have entered an open plea of guilt to the several counts in the indictment.
>
> . . . .
>
> The record demonstrates by clear and convincing evidence that the performance of trial counsel fell below the range of competence required in criminal cases. The evidence in the record also establishes a reasonable probability of prejudice, because the Petitioner's "ability to make an intelligent decision regarding [the] plea offer[s] [was] severely undermined." [United States v.] Morris, 470 F.3d [596,] 603 [(6th Cir. 2006)] (quoting United States v. Morris, 377 F. Supp. 2d 630, 638 (E.D. Mich. 2005)). The standards established in Strickland and Hill require that the convictions be set aside and the cause be remanded for trial.

Id. at 222.

As in Grindstaff, trial counsel's deficient performance in this case severely undermined the Petitioner's ability to make an intelligent decision regarding the State's plea offers. Therefore, we conclude that the Petitioner was prejudiced by trial counsel's incorrectly advising him that he would be eligible for the boot camp program if he accepted the State's third offer. The Petitioner is entitled to post-conviction relief.

## III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we conclude that the Petitioner received the ineffective assistance of trial counsel.  The judgment of the post-conviction court is reversed, the judgments of conviction are vacated, and the case is remanded for further proceedings consistent with this opinion.

_____
NORMA McGEE OGLE, JUDGE